UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TRACEY DOUGLAS,

                         Plaintiff,

                                                               DECISION AND ORDER

-vs-

                                                                14-CV-6018 CJS

ANTHONY ANNUCI, et al.,

                         Defendants.

_____

INTRODUCTION

This is an action under 42 U.S.C. § 1983 brought by Tracey Douglas ("Plaintiff"), a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff alleges that Defendants have failed to protect him from attacks by other inmates. Now before the Court is Plaintiff's application for preliminary injunctive relief (Docket No. [#20]). The application is denied, without prejudice.

BACKGROUND

According to the DOCCS website, Plaintiff is serving a prison term for robbery, with an earliest release date of October 12, 2020, and a maximum possible sentence of life. Plaintiff maintains that the subject robbery conviction involved the robbery of a high-ranking member of the Bloods gang, which has resulted in the Bloods targeting him for retaliation on several occasions.[1] More specifically, Plaintiff contends that the Bloods have slashed

---

[1] Plaintiff, who in connection with his current term of imprisonment was sentenced as a persistent violent felony offender, offers various inconsistent explanations for why the Bloods gang wants to harm him. In his Complaint, he suggests that it is because he committed armed robbery against "one of the highest ranking members" of the Bloods. That explanation seems dubious in view of the publicly-filed documents concerning his conviction which suggest that his victim was merely a

his face on several occasions, the last of which was in 2008, as a means of marking him as a "snitch" or enemy of the Bloods.  According to Plaintiff, such attacks have left him with distinctive facial scarring common to such attacks, such that he is presumably a "marked man" in terms of his physical appearance.  That is, the logical inference from Plaintiff's contentions is that any member of the Bloods gang would recognize him as someone who had been previously targeted by the organization.  Plaintiff indicates that the Bloods actually want to kill him, but he does not explain why, if that is so, they have thus far limited their attacks to slashing his face.

Because of the foregoing, Plaintiff contends that his life is in danger at any DOCCS facility that is "*predominantly* Blood Gang leaders & members."[2]  He contends that such facilities are the following: "Elmira, Attica, Auburn, Clinton,  Clinton Annex, 5 Points, Wende, Coxsackie, Green Haven, Shawangunk, Great Meadow, Upstate [and] Southport."[3] Plaintiff does not explain why he is not also in danger at other facilities which also presumably have numerous Bloods gang members, given that he claims to be readily physically identifiable as an enemy of that organization.

In any event, when Plaintiff commenced this action he was housed at Elmira, which is one of the facilities at which he claims to be in danger. Subsequently, though, in January 2015, he was transferred to Eastern Correctional Facility, where he claimed to be relatively safe. Consequently, on July 14, 2016, the Honorable Michael A. Telesca, Senior United States District Judge, granted partial summary judgment to Defendants with regard to

---

female citizen whose purse Plaintiff stole at knifepoint. *See, e.g., People v. Douglas*, 4 N.Y.3d 777, 826 N.E.2d 796 (2005).

[2]Docket No. [#20] at p. 1 (emphasis added).

[3]Docket No. [#20] at p. 1.

Plaintiff's request for injunctive relief, finding that the claim was moot.

More recently, on January 26, 2017, the Court received a letter from Plaintiff, indicating that on January 20, 2017, he was transferred to Five Points Correctional Facility ("Five Points"), which is one of the facilities at which he claims to be unsafe. The unsworn letter is not designated as a motion, but the Court liberally construes the communication as a request for preliminary injunctive relief. In that regard, Plaintiff claims that after being at Five Points for one week, he has "already . . . been threatened with death, . . . called a rat [and] a snitch and other names [that he] will not mention."[4] Plaintiff does not indicate who made such threats, nor does he specifically contend that the issuers of the threats are members of the Bloods gang.

Plaintiff contends that he informed staff at Five Points about his "history of being assaulted and why," and that he had "both known and unknown enemies" at Five Points.[5] Plaintiff's letter, though, does not indicate the name of the staff member to whom he allegedly spoke. Nevertheless, Plaintiff indicates that he was told that his concerns would be passed on to Five Point's Deputy Superintendent for Security. Somewhat confusingly, Plaintiff's letter then indicates both that "no one has spoken to [him] from Security Staff," and that he has been "asked if [he] know[s] 'any names' besides nicknames." On this point, Plaintiff indicates that he has "identified 4 [four] known enemies," though he does not expressly indicate whether he passed that information on to Five Points staff. Plaintiff further indicates that he has written a letter to DOCCS Commissioner Anthony Annucci, requesting a transfer to "to APPU [sic] in Clinton C.F. or to protective custody at Sing Sing

---

[4]Docket No. [#20] at p. 1.

[5]Docket No. [#20] at p. 1.

C.F."[6]

## DISCUSSION

The standard to be applied when considering an application for preliminary injunctive relief is well settled:

> A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor. When the movant seeks a 'mandatory' injunction-that is, as in this case, an injunction that will alter rather than maintain the status quo-[he] must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits.

*Doninger v. Niehoff*, 527 F.3d 41,47 (2d Cir. 2008) (citations omitted).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by persons acting under color of state law." *Burns v. City of Utica*, 590 Fed. Appx. 44, 49 (2d Cir. Nov. 7, 204) (citation omitted).

"In order to prevail on an Eighth Amendment claim based on a prison official's 'deliberate indifference' to a substantial risk of serious harm, a plaintiff must show not only that the harm is sufficiently serious, but that the defendant acted with a sufficiently culpable state of mind, and was not merely negligent." *Doyle v. Coombe*, 159 F.3d 1346 (table), 1998 WL 537066 at *2 (2d Cir. Jun. 12, 1998). It is *possible* for an inmate to show "a substantial risk of serious harm" even though he did not sustain actual harm, but in "most cases" the absence of any injury will be "highly relevant to the question of whether the [defendant] subjected the prisoner to a significant risk of serious harm." *Hall v. New York*,

---

[6]Docket No. [#20] at p. 2.

476 Fed.Appx. 474, 477, 2012 WL 1003765 at *2, n. 1 (2d Cir. Mar. 27, 2012). On this point, courts have held that the mere fear of being assaulted by other inmates is insufficient to establish a substantial risk of objective harm. *See, e.g., Cooper v. City of New York*, No. 13–cv–7590 (PKC)(JLC), 2014 WL 5315074 at *3 (S.D.N.Y. Oct. 17, 2014) ("While an actual physical attack is not required to demonstrate a substantial risk of serious harm, mere fear of an assault is insufficient to state a claim for an Eighth Amendment violation.").

Here, the Court finds that Plaintiff has not made the showing required to obtain preliminary injunctive relief. To begin with, although there is no dispute that Plaintiff was actually attacked on several prior occasions, the last such attack was in 2008. Moreover, for the reasons noted above, Plaintiff's present application is quite vague. Additionally, it appears that Plaintiff made this application to the Court simultaneously with, or at least very close in time to, him informing officials at Five Points about this concerns. Therefore, it is unclear what, if any, steps may have been taken in the interim by officials at Five Points. For all of these reasons, Plaintiff's application [#20] is denied insofar as it seeks preliminary injunctive relief, without prejudice to him filing a more detailed application in the event that officials at Five Points fail to address the situation to his satisfaction.

## CONCLUSION

Defendants' application for preliminary injunctive relief [#20] is denied.

So Ordered.

Dated: Rochester, New York
       February 17, 2017

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge